# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Antonio D. Tisdale, #245579, )<br>)<br>        Petitioner, )<br>)<br>        v. )<br>)<br>State of South Carolina; Henry )<br>McMaster, Attorney General for )<br>South Carolina; )<br>)<br>        Respondents. )<br>_____) | Civil Action No.: 4:04-1319-PMD-PJG<br><br><br>**<u>ORDER</u>** |

      This matter is before the court upon Petitioner Antonio D. Tisdale's ("Petitioner") Objections to a United States Magistrate Judge's Report and Recommendation ("R&R") that Respondent's Motion for Summary Judgment be granted and that his Motions for Summary Judgment and Judgment on the Pleadings be denied. Having reviewed the entire record, including Petitioner's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## **<u>BACKGROUND</u>**

      Petitioner, a self-represented state prisoner, was indicted in Charleston County for entering a bank with intent to steal, armed robbery, grand larceny, and possession of a weapon during the commission of a crime. Tisdale was represented by counsel in a jury trial, and the jury found him guilty as charged. The circuit court vacated the guilty verdict as to the grand larceny charge, but sentenced Petitioner to thirty years' imprisonment for armed robbery, thirty years' imprisonment for entering a bank with the intent to steal, and two years' imprisonment for the

possession of a weapon during the commission of a crime, all sentences to be served concurrently.

This matter has a lengthy procedural history, which includes several prior reports and recommendations as well as orders. This matter was filed in April of 2004. On July 22, 2004, Respondents filed their first motion for summary judgment, and this motion was denied without prejudice and with leave to re-file due to the fact that the transcript was missing pages. On March 21, 2005, Respondents filed an amended motion for summary judgment, and the court granted the motion as to Petitioner's grounds two, four, five, six, and seven and denied the motion as to grounds one and three. The order also gave Respondents the right to re-file their motion for summary judgment as to grounds one and three to address them on the merits. Respondents' Motion for Summary Judgment on these grounds is now before the court.

The Magistrate Judge set forth a comprehensive procedural background for the rest of this case in her R&R, which includes several appeals and several applications for post-conviction relief. Petitioner does not object to its accuracy, and the court adopts it for purposes of this order. As such, the court proceeds to review the three remaining grounds for relief asserted by Petitioner in his 28 U.S.C. § 2254 Petition:

> **Ground One:** Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, denial of effective assistance of counsel.
> **Supporting Facts:** The identification was the result of an illegal detention. Court exhibit Number 1 is also State's exhibit #2 which should have been suppressed.
>
> **Ground Three:** Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
> **Supporting Facts:** There is no exception to a defective search warrant. Trial counsel made a motion, which was denied to exclude sound identification of the car because such testing went beyond the scope of the search warrant. App. Pp. 45–46. The

|   |   |
|---|---|
|   | search warrant (and accompanying affidavit) did not state that the car could be seized and/or tested. |
| **Ground Eight:**[1] | The conviction was obtained in violation of Petitioner's Sixth Amendment right to counsel. All in violation of the . . . 6th and 14th Amendment to the United States Constitution, to deprive petitioner of his life and liberty without receiving due process or equal protection of the law. |

## **STANDARD OF REVIEW**

### I. Standard for Reviewing Magistrate Judge's R&R

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the court retains the responsibility for making a final determination. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). If a party makes a written objection to a Magistrate Judge's report within ten days of being served with a copy of that report, the court will review the specific objections *de novo*. 28 U.S.C. § 636(b)(1). The court is allowed to accept, reject, or modify the R&R in whole or in part. *Id*. Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id*. *Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a court is charged with liberally construing a complaint filed by a *pro se* litigant to allow for the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### II. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but

---

[1] The Magistrate Judge permitted Petitioner to amend his original Petition to assert an eighth ground for relief.

rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## ANALYSIS

### I. Petitioner's Motions for Default

Although Plaintiff objects to the Magistrate Judge's ruling that denied his Motions for Default, that ruling was not a recommendation to the court; rather, it was an order that dismissed his motions. Therefore, the court does not address his objections to that order.

## II. Petitioner's First Ground for Relief

Based on Petitioner's Petition and the Petitioner's Motion for Summary Judgment, the Magistrate Judge interpreted Petitioner to assert three arguments under his first ground for relief: (1) he was legally detained and arrested before proper identifications and statements were made in violation of his Fourth Amendment rights; (2) an improper identification of Petitioner occurred based on a photograph included in a newspaper article and a television news broadcast; and (3) trial counsel was ineffective in failing to request a *Franks* hearing.

### a. Fourth Amendment Claim

The Magistrate Judge found that Petitioner's allegations of a violation of the Fourth Amendment as a freestanding claim cannot constitute grounds for habeas relief, as he has not demonstrated that he did not have a full and fair opportunity to litigate this claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976) (holding "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978) (applying *Stone* and holding that where a state court provides a mechanism under state practice to litigate Fourth Amendment claims, then the court "need not inquire further into the merits of the petitioner's case . . . unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.") Therefore, she recommended denying Petitioner relief on this ground. (R&R 17.) In his Objections, Petitioner explains that any Fourth Amendment claims are part of his ineffective assistance of counsel claims. To the extent Petitioner seeks relief based on a claim that his Fourth Amendment rights have been violated, the court finds that argument meritless based on the

Magistrate Judge's recommendation. To the extent Petitioner alleges an ineffective assistance of counsel claim based on a failure to argue Fourth Amendment violations on appeal, the court addresses this claim in its analysis of Petitioner's Ground Three, discussed below.

### b. **Suppression of Identifications**

Petitioner also asserts that the trial court erred in permitting in-court identifications of him by witnesses who viewed photographs of him printed in the newspaper as well as a report on television following his arrest. The morning after Petitioner's arrest:

> A teller [from the bank], Justine Mood, telephoned [Officer Robert Myers] and stated she had seen a report of [Petitioner's] arrest on television the previous night and she believed [he] was the robber.[2] Myers drove to the bank and took Mood's statement. While there, Georgia Vannice, another teller told him she had identified [Petitioner] from a photo in a newspaper article about his arrest.[3] She also gave Myers a written statement. Michelle Crawford, a "floating" temporary for [the bank], also identified [Petitioner] from the newspaper the morning after the robbery and subsequently gave a statement to police. After these identifications, Myers never completed [a photo line-up] because the police decided it would be futile. A few days later, however, Myers returned to the bank and showed Vannice a photograph of [Petitioner] which she said depicted the robber.

(Tr. 645.) Petitioner appealed this issue after being convicted, and the South Carolina Court of Appeals, after a careful and thorough analysis of both state and federal law, upheld the trial court's decision not to suppress the identifications made by the tellers of the bank. (Tr. 648.)

An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created "a very substantial likelihood of irreparable misidentification." *See Manson v. Brathwaite*, 432 U.S. 98 (1977); *Stovall v. Denno*, 388 U.S. 293, 302 (1967). In excluding improper identification testimony:

> the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' . . . It is the likelihood of misidentification which violates a

---
[2] The television news report was filmed at [Petitioner's] post-arrest bond hearing.
[3] The photograph of [Petitioner] was a 'mug shot" taken after a previous arrest for drug possession in 1995.

6

defendant's right to due process . . . . Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.

*Neil v. Biggers*, 409 U.S. 188, 198 (1972) (internal citation omitted). The South Carolina Court of Appeals held that this *Neil* analysis "is inapplicable where there is a nongovernmental identification source," such as in Petitioner's case, where "the televised bond hearing and newspaper article were non-governmetnal sources of the suggestiveness." (Tr. 646.) The court of appeals further found that the identification testimony admitted by the bank tellers in Petitioner's case did not violate due process, as all the tellers were fully cross-examined regarding their descriptions and the suggestiveness of the media identification. (Tr. 647.) The court explained that the amount of time between the robbery and the media identification was short, less than twenty-four hours, and that all three tellers testified that they had ample time to observe the robber from close proximity. (Tr. 648.) Moreover, all three tellers testified they were certain of their identifications, and all three tellers mentioned the robber's distinctive chin structure. (*Id.*)

In his Objections, Petitioner argues that the bank tellers' original statements did not describe any facial features, facial hairs, or physical description of the robber. Petitioner further argues:

> Ms. Vannice testified that on the day of the robbery, she wanted to give the police all the information she could about the robber that she thought was important but she didn't describe any facial features or physical descriptions just less than a half hour after she had been robbed.
>
> Mrs. Vannice testified that she never told the police she thought she could identify the masked person if they caught him. . . . Ms. Mood testified that she also never told the police that she thought she could identify the robber. . . . Ms. Mood testified that she had doubts about picking out the man she saw on T.V. as being the robber. . . Michelle Crawford testified that she didn't know for sure if the petitioner's face was the same as the robbers.

7

> It wasn't until Ms. Mood saw petitioner on T.V. that she made an identification. And Crawford and Vannice didn't make their identification until seeing petitioner in the newspaper. . . . N.C.P.D. put an innocent man in the newspaper, and on t.v., then the following week detective Meyers showed Ms. Vannice another single photo of petitioner.

(Objections at 25–26.)

Petitioner also argues that Ms. Vannice testified the robber was five feet, four inches tall and Ms. Mood testified that the robber was being five feet, ten inches tall; yet, he is really five feet, seven inches tall. This discrepancy, by itself, does not render the tellers' identifications of Petitioner unreliable, particularly considering they were making observations with a gun pointed at them. Petitioner finally asserts that "Lt. Melvin Cumbee of the North Charleston Police Department is the government official responsible for releasing [his] name, photo, identity, and any other information to the press on 10-25-96." Petitioner has not offered any evidence to support this allegation.

Based on this court's review of the transcript, the witnesses testified concerning their recollection of Petitioner independent of the media photographs. As the court of appeals found, the witnesses provided testimony as to the circumstances under which they observed Petitioner; the certainty of their identifications; and the reasons for their certainty. Also, the witnesses were cross-examined, and the court of appeals found that the media identifications of Petitioner did not constitute government action warranting suppression of these witnesses' testimony. The court finds that Petitioner has failed to demonstrate that the court of appeals unreasonably applied clearly established federal law on this issue and has failed to demonstrate through clear and convincing evidence that the courts' factual findings regarding the witnesses' testimony was erroneous. see *United States v. Peele*, 574 F.2d 489 (9th Cir. 1978) ("The extent to which a suggestion from nongovernment sources has influenced the memory or perception of the witness,

or the ability of the witness to articulate or relate the identifying characteristics of the accused, is a proper issue for the trier of fact to determine."); 28 U.S.C. § 2254(e)(1).

### c. Ineffective Assistance of Trial Counsel

Petitioner also argues that his trial counsel proved ineffective by failing to request a *Franks* hearing prior to the trial to challenge the truthfulness of the affidavit that supported probable cause for the arrest and search warrants issued in his underlying criminal case. Since, according to Petitioner, the warrants were false, failure to challenge them rendered his trial counsel ineffective. The Magistrate Judge concluded that Petitioner could not show that the South Carolina courts unreasonably applied clearly established federal law in rejecting this claim asserted by Petitioner because he has not demonstrated that his trial counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by his counsel's failure to request a *Franks* hearing.

To demonstrate ineffective assistance of counsel, Petitioner must show, pursuant to the two-prong test enunciated in *Strickland v. Washington*, that (1) his counsel was deficient in his representation, and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, Petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment, and with regard to the second prong, Petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In his Objections, Petitioner repeats the arguments he already made in his motions to the court, (Objections at 27), and the court adopts the Magistrate Judge's ruling on these arguments.

Affidavits supporting a search warrant are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). To overcome this presumption, Petitioner must show (1) an affiant knowingly, intentionally, or with a reckless disregard for the truth, provided a false statement; and (2) this false information was necessary to establish probable cause. *Simmons v. Poe*, 47 F.3d 1370, 1383 (4th Cir. 1995). Petitioner first argues that Larry Fanning, one of the witnesses involved in his criminal case, could not identify who was driving the car during the bank robbery as the affidavit supporting his arrest warrant declared. A review of the affidavit supporting the arrest warrant reveals that it states the witness gave a signed statement in which he positively identified the vehicle and observed a lone black male driver. (R. 773.) This statement is consistent with Mr. Fanning's testimony at trial. (Tr. 317–18.) Petitioner also argues that there were no eyewitnesses at the bank or around the bank that saw him get out of the car as the affidavit avers. Again, Petitioner is misconstruing the contents of the affidavit. The PCR court found the following:

> The arrest warrant for entering a bank with intent to steal does not state a witness in the area identified [Petitioner] as the driver of a car seen leaving the area of the robbery. Rather, the arrest warrant affidavit avers that the witness (Larry Fanning) gave a signed statement in which the witness positively identified the vehicle and observed a lone black male driving the vehicle (See affidavit on p. 733 of PCR Appendix). The affidavit then further explained the manner in which officers developed [Petitioner] as a suspect. Because the record directly refutes [Petitioner's] testimony as to this allegation and because [Petitioner] failed to present evidence to establish that counsel's performance in the regard was deficient and that he suffered the requisite prejudice, the allegation is denied and dismissed.

(Tr. 792.) These findings by the state court are entitled to a presumption of correctness, and Petitioner must rebut that presumption by clear and convincing evidence. 28 U.S.C. 2254(e)(1). By simply making the same arguments in his Objections, Petitioner has not shown that these findings are incorrect, and a review of the record support's the state court's finding. Finally,

Petitioner asserts that because the affidavit is invalid because it states that a video tape of the robbery reveals that the perpetrator had a scar on his left forearm, which he believes is factually incorrect. He bases this argument on his attorney's closing argument at his criminal trial, where the attorney stated to the jury that a scar could not be seen on the video. The Magistrate Judge found that, even if the statement was incorrect, the affidavit contained sufficient other evidence to support probable cause for Petitioner's arrest. Petitioner did not specifically object to this finding; therefore the court adopts it.

As such, the court finds that Petitioner failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by his counsel's failure to request a *Frank*'s hearing, *Strickland*, 466 U.S. 687, and his request for habeas relief on this ground is denied.

### III. Petitioner's Third Ground for Relief

Petitioner's third ground for relief, as stated in his Petition, asserts

> **Ground Three:** Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
> **Supporting Facts:** There is no exception to a defective search warrant. Trial counsel made a motion, which was denied to exclude sound identification of the car because such testing went beyond the scope of the search warrant. App. Pp. 45–46. The search warrant (and accompanying affidavit) did not state that the car could be seized and/or tested.

(Petition at 5.) The Magistrate Judge recommended that this ground for relief be denied since claims asserting Fourth Amendment violations, as stated above, cannot constitute grounds for habeas relief, unless Petitioner demonstrated that he did not have a full and fair opportunity to litigate his claim in state court, which he did not. In his Objections, Petitioner contends that the Magistrate Judge misconstrued his Petition, as he is really claiming that he received ineffective assistance from his appellate counsel when she failed to raise two issues on appeal: whether or

11

not the trial court erred in admitting evidence obtained pursuant to a search warrant, and (2) whether the trail court erred in admitting Larry Fanning's identification of Petitioner's car. (Objections at 28.)[4]

At trial, Petitioner's counsel argued that the seizure of Petitioner's automobile was not authorized by the search warrant. It appears that police obtained a search warrant authorizing them to search Petitioner's car, in which they found a plastic bag that was allegedly used during the bank robbery. When they could not open the trunk, they had the car towed and had the car dealership that sold Petitioner the car give them a key to the trunk so it could be opened. Inside the trunk, they found a baseball cap and another brown plastic bag. The police also had Larry Fanning, a witness who said he heard the getaway car leave the bank and that it had a unique sound, listen to the sound of Petitioner's car when running so he could identify it as the car that left the scene of the bank robbery. (Tr. 44.) Since the search warrant did not authorize police to have the car towed, Petitioner's trial counsel asked that the evidence found in the trunk be suppressed. The court denied Plaintiff's motion, finding that Plaintiff was already arrested by the time Police searched the car and that it was reasonable for the police to further their investigation based on finding evidence in the car that was allegedly related to the bank robbery. (Tr. 47.)

Petitioner's trial counsel also moved to suppress the testimony of Mr. Fanning, which identified Petitioner's car as the car he heard leaving the bank robbery. Trial counsel argued that, since the search warrant did not authorize the police to tow Petitioner's car and since the police failed to preserve the car by allowing the tow truck company to auction it off after Petitioner

---

[4] To the extent Petitioner argues that his trial counsel was ineffective "for failing to make specific objections or conduct an independent suppression hearing prior to trial as to the Fourth Amendment violation," (Objections at 19), the court finds that argument meritless. The trial transcript reveals that Petitioner's trial counsel made a motion to suppress evidence found pursuant to a search warrant and a motion to suppress the identification of Petitioner's car by a witness, Mr. Fanning, (Tr. 42–80); both denied by the court.

never claimed it, Petitioner could not test the sound of the muffler of the car to cross-examine Mr. Fanning's statements. (Tr. 48–51.) The trial court denied this motion to suppress, finding that the police did not have anything to do with Petitioner's car being auctioned, as the towing truck company did it on its own accord after attempting to notify the owners that they possessed it, and finding that, since Mr. Fanning personally heard the muffler at the time of the crime, he could testify to his perceptions. (Tr. 79–80.) On appeal, Petitioner's appellate counsel did not raise these two issues.

The PCR court found that Petitioner's appellate counsel was ineffective, based on the totality of arguments, including the two just discussed, that could have been argued on appeal but were not. The South Carolina Supreme Court disagreed, reversed the PCR court's finding, and denied Petitioner's arguments that his appellate counsel was ineffective. Applying the *Strickland* standard, the Court stated, "[W]e reviewed the grounds that respondent claims were meritorious but were not raised by appellate counsel. We find no merit to respondent's claims. . . . Because [Petitioner] is unable to prove prejudice, the PCR court's decision is reversed." (R. at 751.)

Petitioner's primary arguments in his Objections concern the statements given by Larry Fanning, the witness near the bank at the time of the robbery, which was relied upon by police in arresting Petitioner. Petitioner contends that "there was nothing to tie the bank robber to being in the car. It was speculation and a hunch." (Objections at 14.) He further argues that Larry Fanning's first statement did not mention anything about him hearing a distinctively loud muffler sound; it only mentioned him seeing a yellow paper tag. Petitioner alleges that it was not until Fanning's statement was "rewritten for him by Detective Joe Meyers" that it stated he heard a distinctively loud muffler sound. (Objections at 14–15.) Thus, Petitioner believes "Fanning

provided no predictive information, leaving the police without any means to test his knowledge or credibility." (Objections at 16.)

As discussed above, to demonstrate ineffective assistance of counsel, Petitioner must show, pursuant to the two-prong test enunciated in *Strickland v. Washington*, that (1) his counsel was deficient in his representation, and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To show the prejudice-prong of the *Strickland* analysis, Petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The court does not believe the South Carolina Supreme court applied this federal law unreasonably, when it found that Plaintiff was not prejudiced by the fact that his appellate counsel did not raise these issues on appeal, nor has Petitioner shown through clear and convincing evidence that the factual findings of the trial court regarding Mr. Fanning's testimony were erroneous. *See Williams v. Taylor*, 529 U.S. 362, 410 (2000). There was other evidence in the record, such as the bank teller's testimony and identification of Petitioner, which supported Plaintiff's conviction.

## IV. **Petitioner's Eighth Ground for Relief**

In his eighth ground for relief, Petitioner asserts:

The conviction was obtained in violation of Petitioner's Sixth Amendment right to counsel. All in violation of the Petitioner's 6th and 14th Amendment to the United States Constitution, to deprive petitioner of his life and liberty without receiving due process or equal protection of the law.

Petitioner contends that he was denied counsel at his bond hearing, resulting in the subsequent use of photographs that were taken at the bond hearing. The Magistrate Judge determined that this ground for relief is procedurally barred from review, as Petitioner did not properly exhaust this claim and the PCR court did not rule on it. Since Petitioner did not allege sufficient cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will occur by

failing to consider this claim, the Magistrate Judge recommended the court deny this ground of relief. (R&R at 22.) In his Objections, Petitioner argues, which the Magistrate Judge recognized, that Petitioner did raise this argument at his first PCR hearing (Tr. 670–72.)

The court has reviewed the parts of the record cited to by Petitioner, and while he did raise the issue during his first PCR hearing, the PCR court never ruled on this claim. Moreover, the Petitioner did not state this claim as a ground for relief in his first application for post-conviction relief; therefore, the PCR judge, on remand, never ruled on the claim Petitioner now presents. Furthermore, Petitioner never made a motion to alter or amend the judgment. Instead, the PCR court ruled on the claim Petitioner asserted in his original application for post-conviction relief that "the photographic array was illegal because it constituted an 'illegal one on one mug shot.'" (Tr. 653–54, 793.) Although Petitioner did raise this claim in his second *pro se* petition for certiorari, which was dismissed by the South Carolina Court of Appeals, the court would not have ruled on this issue since it was not preserved for appeal.[5] As such, the court adopts the Magistrate Judge's ruling that this claim—that his constitutional right to counsel was violated when he was not provided counsel at a bond hearing—is procedurally barred from federal habeas review.

Petitioner contends that a fundamental miscarriage of justice will occur if the court does not review this claim, as "the facts in this case are so extraordinary that constitutional violations ha[ve] probably resulted in the conviction of one who is actually innocent." (Objections at 20.) Petitioner argues that "there was a very substantial likelihood of misidentification of [him]. The suggestive display of the petitioner's photograph to bank tellers/witnesses likely erased any independent memory tellers had retained from their barely adequate opportunity to observe

---

[5] The court acknowledges that Petitioner has asserted this claim in his third application for post-conviction relief, which is currently pending with the Charleston County Court of Common Pleas.

criminal." (*Id.* at 21.) Petitioner's primary argument is that police implemented an unduly suggestive method of identifying him as a suspect by having witnesses identify him as a suspect in the crimes he was charged for after several media outlets released a mug shot and photographs taken of him during his bond hearing. Essentially, Petitioner takes issue with the fact that the bank tellers identified him as a suspect after his photographs were released to the general public. Since Petitioner's argument really concerns the out-of-court identification of him as a suspect, the court does not find that a fundamental miscarriage of justice will occur if the court does not review his claim that he was denied his Sixth Amendment right to counsel at his bond hearing. Even assuming that Petitioner's right to counsel attached at arraignment, his "lack of counsel at his arraignment was plainly harmless beyond a reasonable doubt . . . because [he] pleaded not guilty and requested a jury trial, he did not waive any rights at the arraignment, and he was left free to enter into subsequent plea negotiations if he so desired." *United States v. Owen*, 407 F.3d 222, 229 (4th Cir. 2005). Therefore, the court dismisses this ground for relief.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Respondent's Motion for Summary Judgment is **GRANTED**, and Petitioner's Motions for Summary Judgment and Judgment on the Pleadings is **DENIED**. This order renders all other outstanding motions **MOOT**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**September 30, 2009**
**Charleston, SC**